**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| T-ZONE HEALTH, INC.,               ) | |
|                                    ) | |
| Plaintiff,       ) | |
|                                    ) | No. 2:21-cv-01555-DCN |
| vs.                                ) | |
|                                    ) | **ORDER** |
| SOUTHSTAR CAPITAL, LLC,            ) | |
|                                    ) | |
| Defendant.       ) | |
| _____) | |

The following matter is before the court on defendant SouthStar Capital, LLC's ("SouthStar") motion to dismiss, ECF No. 5. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Plaintiff T-Zone Health, Inc. ("T-Zone") is a Canadian importer and wholesaler of various fitness and health-related products.[1] SouthStar is a limited liability company organized in South Carolina with a principal place of business in Charleston, South Carolina. SouthStar and its affiliated entities provide various financial services to commercial businesses, including invoice financing, factoring of accounts receivable, and the collection of receivables. One of SouthStar's customers (the "Customer") sells fitness products through large retailers, such as Costco and Sam's Club. SouthStar's wholly owned subsidiary, SouthStar Financial, LLC, provides various financial services to the Customer, including but not limited to financing its purchases of fitness equipment from T-Zone.

---

[1] Unless otherwise noted, the following background is derived from the complaint.

1

On November 6, 2019, T-Zone received an order for fitness equipment from the Customer. The order was for 2,700 machines, at a total price of $947,025.00. T-Zone prepared its invoice number T39237 (the "First Invoice") and sent it to SouthStar by email. ECF No. 1-1. On November 8, 2019, T-Zone received an acknowledgement and approval of the First Invoice from SouthStar by email. ECF No. 1-2. T-Zone alleges that it relied on SouthStar's acknowledgement and approval in ordering the equipment described in that invoice.

A similar series of events occurred about four months later. On March 10, 2020, T-Zone received another order for fitness equipment from the Company. The order was for an additional 2,700 machines, at a total price of $968,625.00. Upon receipt of the purchase order, T-Zone prepared its invoice number T39605 (the "Second Invoice") and sent it to SouthStar by email. ECF No. 1-3. On March 13, 2020, SouthStar responded to T-Zone by email, acknowledging and approving the Second Invoice. The email stated that "SouthStar will pay for the units as each container is received at the warehouse." ECF No. 1-4. Again, allegedly in reliance on SouthStar's email, T-Zone ordered the equipment described in this invoice.

During the period from June 17, 2019 through June 22, 2020, SouthStar continued to pay T-Zone for other equipment purchased by the Customer from T-Zone. However, on August 28, 2020, T-Zone received an e-mail from SouthStar's chief operating officer stating that "SouthStar will not be paying any further container shipments at this time. Because of CoVid, SouthStar has not been paid for a very long time and the Costco relationship has become difficult." ECF No. 1-5. As of April 26, 2021, T-Zone alleges

that, out of the 5,400 machines for which SouthStar approved and authorized invoices, SouthStar has only paid for approximately 1,795.

On May 26, 2021, T-Zone filed complaint against SouthStar, alleging breach of contract and promissory estoppel. ECF No. 1, Compl.[2] On July 15, 2021, SouthStar filed a motion to dismiss. ECF No. 5. On July 27, 2021, T-Zone responded, ECF No. 8, and on August 3, 2021, SouthStar replied, ECF No. 9. On October 4, 2021, the court held a hearing on the motion. ECF No. 11. As such, this motion has been fully briefed and is now ripe for review.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true

---

[2] Notably, T-Zone previously filed a complaint against SouthStar in this court on July 2, 2020. T-Zone Health, Inc. v. SouthStar Capital, LLC, No. 2:20-cv-02519-DCN (D.S.C. 2020) (the "First Action"). The First Action alleges claims of unjust enrichment and violation of the South Carolina Unfair Trade Practices Act ("SCUPTA"), in addition to breach of contract and promissory estoppel claims similar to the ones brought in the instant action. The court granted a motion to dismiss the SCUPTA claim in the First Action but denied it as to the unjust enrichment claim. The First Action and the instant action are based on similar underlying factual scenarios; however, each action involves different unpaid invoices and therefore different damages.

T-Zone explains that, in the First Action, it alleges that the equipment identified in the invoices was ordered by T-Zone, received by T-Zone, and picked up by the Customer. T-Zone is seeking to recover the full invoice price of that equipment in that case. T-Zone further explains that the instant case arose several weeks after it filed the First Action on July 2, 2020, when T-Zone received the e-mail from SouthStar that attempted to revoke its agreement to pay the invoices on August 28, 2020. ECF 1-5. According to T-Zone, some of the approved equipment was ordered but was not delivered to the Customer before SouthStar's attempt to terminate the agreement. Therefore, in the present case, T-Zone seeks to recover the damages and lost profits it sustained due to the improper cancellation, rather than the full purchase price shown on the invoices. During the hearing, the parties agreed to consolidate the two cases for discovery purposes.

and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.   DISCUSSION

SouthStar asks the court to dismiss T-Zone's breach of contract and promissory estoppel causes of action under Rule 12(b)(6) for failure to state a claim. The court discusses each cause of action in turn below, ultimately denying the motion as to both.

**A. Breach of Contract**

SouthStar first argues that T-Zone fails to state a claim for breach of contract. When the court sits in diversity jurisdiction, it must apply federal procedural law and state substantive law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). Under South Carolina law, to establish a breach of contract claim, "the burden [is] upon the [claiming party] to prove the contract, its breach, and the damages caused by such breach." Maro v. Lewis, 697 S.E.2d 684, 688 (S.C. Ct. App. 2010) (quoting Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (1962)). SouthStar argues that T-

4

Zone's pleading fails to satisfy the elements of breach of contract in two respects. First, T-Zone does not sufficiently allege the existence of a contract. Second, even if T-Zone sufficiently pled that a contract existed, the statute of frauds would preclude enforcement of such a contract.

### 1. Existence of a Contract

SouthStar argues that T-Zone does not allege facts demonstrating the existence of a contract between it and SouthStar. An action for damages for breach of contract inevitably requires the existence of a contract. Tidewater Supply Co. v. Indus. Elec. Co., 171 S.E. 2d 607, 608 (S.C. 1969). The elements of a contract are offer, acceptance of the offer, and valuable consideration. Sauner v. Pub. Serv. Auth. of South Carolina, 581 S.E.2d 161, 166 (S.C. 2003). A valid and enforceable contract requires a meeting of the minds between the parties with regard to all essential and material terms of the agreement. Patricia Grand Hotel v. MacGuire Enters., 643 S.E.2d 692, 694 (S.C. Ct. App. 2007). Essential terms of a contract include "price, time, and place." Edens v. Laurel Hill, Inc., 247 S.E.2d 434, 436 (S.C. 1978) (citing 17 C.J.S. Contracts, § 36(2)). The "meeting of the minds" requirement cannot be met by the "secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known." Player v. Chandler, 382 S.E.2d 891, 894 (S.C. 1989). The burden to prove the existence of a binding contract is on the party alleging the contract. Griswold v. Texas Co., 161 S.E. 409, 414–15 (S.C. 1931).

SouthStar first argues that T-Zone fails to identify in its complaint the contract that it alleges SouthStar breached. The court disagrees. Construing the complaint in the light most favorable to T-Zone, as it must, the court finds that T-Zone sufficiently alleges that the contract at issue is the parties' agreements exhibited in the two invoices at issue and their email communications regarding the same. T-Zone confirms this interpretation of the complaint in its response. Therein, T-Zone argues that contracts were formed when it sent SouthStar the invoices by email, and SouthStar acknowledged and approved the invoices by email. Specifically, T-Zone argues that it offered to order the equipment requested by the Customer if SouthStar agreed to pay for the equipment. According to T-Zone, SouthStar accepted the offers by acknowledging and approving the First Invoice and specifically stating in response to the Second Invoice that "SouthStar will pay for the units as each container is received at the warehouse." ECF 1-4. T-Zone argues that its act of ordering the equipment described in the invoices constitutes consideration for the contracts. In particular, T-Zone undertook the responsibility to pay the manufacturer for the equipment that it ordered.

SouthStar, on the other hand, argues that, to the extent T-Zone alleges an agreement existed based on the invoices and email communications at issue, the essential terms of that agreement are unclear such that they cannot form the basis of a contract. Namely, SouthStar argues that the invoices and emails do not detail whether SouthStar "will pay for the invoice once the equipment arrives at or leaves from the T-Zone's Warehouse, how much it will pay, when it will make payment, or otherwise." ECF No. 5-1 at 6. The court again disagrees. The invoices specifically provide both the quantity of machines to be purchased and the purchase price and require "[p]ayment in full upon

arrival at the designated warehouse." ECF No. 1-1; ECF No. 1-3.[3] Construing the facts in the light most favorable to T-Zone and drawing all reasonable inferences in its favor, T-Zone's act of emailing this invoice to SouthStar could plausibly constitute an offer for T-Zone to order all the equipment described in the invoices for the Customer if SouthStar agreed to pay for that equipment. Moreover, the response from the SouthStar employee that "This email serves as acknowledgement and approval from SouthStar for the 12 containers referenced" could plausibly constitute acceptance of the offer as to the First Invoice and agreement to pay for the same. ECF No. 1-2. Likewise, the response from the SouthStar employee that "SouthStar will pay for the units as each container is received at the warehouse" could plausibly constitute acceptance of the offer as to the Second Invoice. ECF 1-4. Indeed, that response explicitly states that SouthStar "will pay" the for the equipment described in the Second Invoice. Id. Additionally, the court agrees with T-Zone that it sufficiently alleged that ordering the equipment and undertaking the responsibility to pay for it constituted consideration for the alleged contracts. Valuable consideration may consist of a benefit to one party or "detriment, loss, or responsibility given, suffered, or undertaken by the other." Hennes v. Shaw, 725 S.E.2d 501 (S.C. Ct. App. 2012). As such, the court concludes that T-Zone has sufficiently alleged the elements of a contract and sufficiently articulated the terms of that

---

[3] Although the full terms of the alleged contract and invoices do not appear on the face of the complaint, T-Zone attaches the invoices and related communications to the complaint and relies on those documents throughout its complaint. SouthStar does not dispute the authenticity of those documents, and the court therefore takes judicial notice of these attachments. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 448 (4th Cir. 2011) (acknowledging that consideration of a document attached to a motion to dismiss is permitted when the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity.").

contract. Therefore, dismissal of T-Zone's breach of contract claim is not warranted based on T-Zone's allegations of the existence of a contract.

### 2. Statute of Frauds

Next, SouthStar argues that T-Zone fails to allege that any contract that existed between the parties satisfied the statute of frauds. The court finds that dismissal is likewise not warranted on this ground. As a procedural matter, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense" except in the rare circumstance where all facts necessary to the affirmative defense "clearly appear on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (alterations omitted and emphasis in original) (citing Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). The applicability of the statute of frauds defense is not clear from the face of T-Zone's complaint. Therefore, SouthStar's attempt to raise the issue of statute of frauds at this juncture is premature.

### B. Promissory Estoppel

SouthStar additionally requests that the court dismiss T-Zone's claim of promissory estoppel. Promissory estoppel requires a claimant to prove: (1) the presence of an unambiguous promise; (2) the promisee reasonably relied upon the promise; (3) the reliance was expected and foreseeable by promisor; and (4) the promisee was injured as a result of the reliance upon the promise. Davis v. Greenwood Sch. Dist. 50, 634, 620 S.E.2d 65, 67 (S.C. 2005). SouthStar argues that T-Zone's claim fails under each element of promissory estoppel, which the court discusses in turn.

### 1. Promise With Unambiguous Terms

First, SouthStar argues that the exchange of emails did not contain any promise by SouthStar with clear and unambiguous terms. SouthStar argues that its email responses cannot be considered promises to pay for the equipment at issue because they contained no clear promise to make payment, and even if they did, the emails did not contain sufficient terms of payment, such as how much SouthStar promised to pay. This argument is unconvincing. As already noted, T-Zone sufficiently alleged via its complaint and the attached documents that both invoices articulated the number of machines, price, and manner of payment. In response to the First Invoice, a SouthStar employee allegedly stated by email, "Hi Claire, This email serves as acknowledgement and approval from SouthStar for the 12 containers referenced. Thank You!" ECF No. 1-2. In response to the Second Invoice, a SouthStar employee allegedly stated, "SouthStar will pay for the units as each container is received at the warehouse." ECF 1-4. Construing these responses in the light most favorable to T-Zone, both emails can plausibly be construed as SouthStar's unambiguous promise to pay for all the equipment described in the respective invoices when received at the warehouse. Therefore, T-Zone sufficiently states a claim with respect to the first element of promissory estoppel.[4]

---

[4] In its motion to dismiss, SouthStar includes a subsection entitled, "T-Zone Is Not Permitted to Circumvent the Statute of Frauds with a Claim of Promissory Estoppel." ECF No. 5-1 at 16. In this subsection, SouthStar argues that "T-Zone fails to sufficiently or adequately plead any oral promise or identify any contract or agreement under which it would be entitled to circumvent the statute of frauds with a claim of promissory estoppel." Id. SouthStar explains that "although the doctrine of promissory estoppel may be used to avoid the Statute of Frauds' writing requirement, it may not be used to create a legally enforceable promise when it would not otherwise be binding under ordinary contract principles." Id. It is unclear to the court whether SouthStar in this subsection is challenging that T-Zone has sufficiently alleged a promise under its promissory estoppel

9

### 2. Reasonable Reliance

T-Zone alleges that it relied on SouthStar's alleged promise to pay when it ordered the equipment described in the two invoices and that its reliance was reasonable based on the parties' prior dealings. SouthStar argues that T-Zone cannot demonstrate the reasonable reliance element of its promissory estoppel claim. First, SouthStar maintains that T-Zone could not have reasonably relied on the alleged promises from SouthStar because the alleged promises did not contain any clearly articulated and definite terms regarding the invoices for which T-Zone could reasonably rely. Second, SouthStar argues that T-Zone's reliance on any purported promise by SouthStar could not be reasonable because "T-Zone already alleged [in the First Action] that it failed to receive payment on previous invoices and purchase orders from SouthStar between July and August of 2019." ECF No. 5-1 at 14. Both of these arguments challenge the reasonableness of T-Zone's alleged reliance, and a court determination on the issue is inappropriate on a motion to dismiss. "[I]ssues of reliance and its reasonableness going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of facts." Unlimited Servs., Inc. v. Macklen Enters., Inc., 401 S.E.2d 153, 155 (S.C. 1991). Whether the lack of specificity in SouthStar's emails or its alleged prior failures to remit payment to T-Zone rendered T-Zone's reliance on any promise to pay unreasonable is question of fact that cannot properly be resolved at this stage before the parties have had the benefit of

---

claim or a contract that satisfies the statute of frauds under its breach of contract claim. In any event, the court finds that T-Zone has sufficiently alleged both.

10

discovery.[5]  Because SouthStar presents no other arguments challenging this element, the court finds that T-Zone sufficiently alleged that it reasonably relied on SouthStar's alleged promise in ordering the machines.

### 3. Foreseeability of Reliance

Next, SouthStar challenges the third element of promissory estoppel—the foreseeability that T-Zone would rely on SouthStar's alleged promise.  SouthStar maintains that because it "did not make any promises or statements to T-Zone containing clearly articulated and detailed terms with respect to the First Invoice or the Second Invoice, it would be impossible for SouthStar to foresee what reliance T-Zone may have placed in such ambiguous statements."  ECF No. 5-1 at 15.  The court has already considered and rejected SouthStar's argument that its emails were too ambiguous to plausibly constitute a promise under the first element.  The court likewise finds that, in the light most favorable to T-Zone, the alleged promise was not too ambiguous for SouthStar to reasonably expect that T-Zone would rely on it and order the equipment discussed in the invoices.  Therefore, T-Zone has sufficiently pled the third element of its promissory estoppel claim.

---

[5] The complaint alleges that T-Zone's reliance was reasonable "[b]ased on their prior course of dealings."  Compl. ¶ 31.  The court acknowledges SouthStar's argument that reliance on this course of dealings was unreasonable as a matter of law because the complaint in the First Action alleges that, under that course of dealing, numerous invoices went unpaid by SouthStar before the disputed invoices in this action were issued.  However, the complaint in this action also alleges that "during the period from June 17, 2019 through June 22, 2020, SouthStar continued to pay T-Zone for other equipment purchased by its [C]ustomer from T-Zone."  Id. at ¶19.  Therefore, the court cannot, at this early stage, conclude that T-Zone's reliance was unreasonable as a matter of law based on the parties' prior course of dealings.

### 4. Injury

Finally, SouthStar complains that T-Zone failed to allege the fourth element of promissory estoppel—injury—because it does not allege that it received the equipment, that the equipment was delivered to its warehouse, or that it offered to tender the equipment to SouthStar or release it to the Customer. T-Zone alleges that it ordered the equipment described in the First and Second Invoices and suffered more than $1,000,000.00 in damages by virtue of these orders and SouthStar's refusal to pay for them. Compl. ¶¶ 14, 18, 26. Based on this allegation, T-Zone has sufficiently pled injury resulting from its alleged act of ordering the equipment in reliance on SouthStar's alleged promise to pay for that equipment.

To the extent SouthStar argues that T-Zone could not have suffered an injury in reliance on its promise to pay for the equipment <u>upon delivery at the warehouse</u> because the equipment was never, in fact, so delivered,[6] the court is unconvinced. In light of T-Zone's allegation that SouthStar reneged on its alleged promise when it emailed T-Zone and stated that it would not pay for any future shipments, <u>see</u> ECF No. 1-5, the fact that the equipment was never delivered was very likely a result of T-Zone's efforts to mitigate the damage from SouthStar's alleged wrongdoing. It may be that the evidence reveals that T-Zone suffered no monetary injury as a direct result of SouthStar's alleged promise to pay. To be sure, the fact that T-Zone never received the equipment at its warehouse suggests—but does not conclusively establish—that T-Zone may have been able to cancel its orders for the equipment or otherwise receive a full refund for the equipment

---

[6] During the hearing, T-Zone conceded that the equipment at issue in this action was never delivered to its warehouse.

ordered.  If that is the case, the court fails to see how any lost profits from the sale of equipment can alone sustain a claim for promissory estoppel.  Indeed, if SouthStar did not promise to pay the invoices at issue, and T-Zone accordingly did not order the equipment, T-Zone likewise would not have made any profit on the equipment identified in the orders.  In other words, it appears to the court that T-Zone did not lose any profits by virtue of its reliance on SouthStar's promise.  Of course, in the event that T-Zone was not ultimately responsible for the full payment of equipment costs, other injuries beyond lost profits are still plausible.  For example, T-Zone may have incurred a cancellation fee, shipping fees, or other business costs in connection with its efforts to mitigate the damages allegedly resulting from SouthStar's email stating that it would not pay for any future shipments.  The court cannot determine the precise nature or extent of the alleged injury until the parties have had the opportunity to conduct discovery.  For now, drawing all reasonable inferences in T-Zone's favor, T-Zone's complaint sufficiently alleges injury to satisfy the fourth element by pleading that it ordered the equipment in reliance on SouthStar's promise to pay.

Because T-Zone has sufficiently alleged each of the four elements, it has stated a claim for promissory estoppel, and the court denies the motion to dismiss this claim.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

      **AND IT IS SO ORDERED.**

                                       **DAVID C. NORTON**
                                       **UNITED STATES DISTRICT JUDGE**

**October 21, 2021**
**Charleston, South Carolina**

14